**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------

MELISSA JOHNSON               :
203 Opal Drive                 :
Cranberry Township, PA 16066   :
                          :     Civil Action No.:
             Plaintiff,    :
                          :
      v.                 :
                          :     **JURY TRIAL DEMANDED**
ENTACT, LLC                :
999 Oakmont Plaza Drive, Suite 300  :
Westmont, IL 60559         :
                          :
            Defendant.   :

---------------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff, Melissa Johnson ("Plaintiff"), by and through her undersigned counsel, for her Complaint against ENTACT, LLC ("Defendant"), alleges as follows:

## INTRODUCTION

1.     Plaintiff initiates this action contending Defendant violated the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.,* by failing to provide reasonable accommodations to Plaintiff; failing to engage in the interactive process; and terminating Plaintiff because of her actual and/or perceived disabilities, because of her past record of impairment, and in retaliation for requesting a reasonable accommodation in connection thereto.

## PARTIES

3.     Plaintiff Melissa Johnson is a citizen of the United States and Pennsylvania and currently maintains a residence at 203 Opal Drive, Cranberry Township, PA 16066.

4.      Upon information and belief, ENTACT, LLC is a for-profit limited-liability company organized and existing under the laws of the State of Illinois with a headquarters located at 999 Oakmont Plaza Drive, Suite 300, Westmont, IL 60559, and maintains a registered office address in the Commonwealth of Pennsylvania located at 2873 W Hardies Road, Gibsonia, PA 15044.

## JURISDICTION AND VENUE

5.      Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6.      On or about November 14, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e).

7.      Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2025-01383 and was filed within one-hundred and eighty (180) days of the unlawful employment practice.

8.      By correspondence dated December 11, 2025, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

9.      One year has passed since Plaintiff filed her complaint with the PHRC and EEOC (her dual-filed Charge of Discrimination), thereby entitling Plaintiff to bring her PHRA claims in court.

10.     Plaintiff filed the instant action within the statutory time frame applicable to her claims.

11.     Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

12.     This action is authorized and initiated pursuant to the ADA and PHRA.

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as well as it is a civil rights action arising under the laws of the United States.

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as Plaintiff's federal law claims.

15.     The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties reside in this judicial district and does business herein, and the unlawful practices of which Plaintiff is complaining were committed in this judicial district.

## FACTUAL ALLEGATIONS

16.     Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17.     By way of background, on August 23, 2024, Defendant offered Plaintiff the position of Proposal Coordinator, which Plaintiff accepted.

18.     Plaintiff's anticipated start date with Defendant was September 9, 2024, subject only to the completion and satisfactory outcome of a background check and drug test.

19.     Prior to Plaintiff's start date, Plaintiff had a conversation with Defendant's Human Resources Department.

20.     Specifically, Plaintiff spoke with Anna Sebela ("Ms. Sebela"), and requested reasonable work accommodations.

21.     By way of further background, Plaintiff suffers from two medical conditions: Attention Deficit Hyperactive Disorder ("ADHD") and Ehlers-Danlos Syndrome ("EDS").

22.     Plaintiff's ADHD affects her brain in many ways, one of which is that it alters her circadian rhythm.

23.     Plaintiff's EDS is a connective tissue disorder that causes chronic pain and fatigue, migraines, and issues with her body regulating autonomic systems, such as blood pressure and body temperature.

24.     The aforementioned medical conditions qualify as disabilities within the meaning of the ADA and PHRA in that they limit one or more major life activities.

25.     As stated, when Plaintiff spoke with Ms. Sebela, Plaintiff requested reasonable work accommodations.

26.     Ms. Sebela put Plaintiff in touch with Defendant's Director of Human Resources, Susan West ("Ms. West").

27.     Plaintiff first spoke with Ms. West on September 3, 2024, via email.

28.     Ms. West informed Plaintiff that Defendant was "pending [Plaintiff's] hire date, until [Defendant] better understand [Plaintiff's] requests and determine if [Defendant] can accommodate."

29.     Ms. West scheduled a time to speak with Plaintiff the following day.

30.     In a follow up email, Plaintiff agreed to speak with Ms. West the following day but did put it in writing that she was simply asking for the accommodation of a flexible schedule, as well as a remote/hybrid work schedule.

31.     When Plaintiff spoke with Ms. West on September 4, 2024, rather than engage in an interactive process, Ms. West did not ask Plaintiff for any medical certifications or any questions about her medical conditions.

32. Instead, Ms. West asked Plaintiff what she would do if a meeting started early in the morning.

33. Plaintiff responded by telling Ms. West that she would participate in the meeting.

34. On this call, Ms. West told Plaintiff, "You realize this is a full-time job, right?"

35. Plaintiff said that she did.

36. At no point was Plaintiff asking to change the hours she was scheduled to work.

37. Plaintiff was just asking for the ability to flexibly schedule her assignments, when possible.

38. Ms. West also asked Plaintiff why she did not disclose her disabilities during the interview process, which led Plaintiff to believe she would not have been hired if Defendant knew about her disabilities prior to making the job offer.

39. Following Plaintiff's conversation with Ms. West on September 4, 2024, Ms. West emailed Plaintiff to say she would have follow up questions as Defendant continued to discuss her accommodation request.

40. Ms. West told Plaintiff she would be out of the office for the remainder of the week, but would work on it again the first of the following week, which would have been September 9, 2024.

41. September 9, 2024, would have been Plaintiff's start date, but her start date was on hold "pending the completion of [Plaintiff's] accommodation request."

42. On September 5, 2024, Plaintiff completed the required drug test.

43. Also on September 5, 2024, Plaintiff emailed Christine Caponigri ("Caponigri"), who would be her manager with Defendant.

44. Plaintiff wanted to loop Ms. Caponigri in because her start date had been pushed back and Plaintiff knew she would be working with Ms. Caponigri.

45. Plaintiff made it clear to Ms. Caponigri that she understood the position of Proposal Coordinator and that the position required quick turnaround, immovable deadlines, flexibility, the ability to manage tasks/projects, and self-motivation.

46. Plaintiff detailed the specifics of her disabilities and the specifics of the accommodation request she had made to HR.

47. At this point, HR still had not asked Plaintiff to complete any paperwork or submit any medical certifications/documents from Plaintiff's medical provider.

48. Plaintiff did not hear anything from Defendant until September 11, 2024.

49. On September 11, 2024, Ms. West emailed Plaintiff a copy of a letter informing her that Defendant was withdrawing the offer of employment it had made to Plaintiff because the accommodations she had requested "are either not feasible, and/or they do not enable [Plaintiff] to fulfill the essential functions of the role."

50. Again, Defendant made its evaluation without any kind of medical certification from Plaintiff's medical provider and/or engaging in the interactive process with Plaintiff whatsoever.

51. Since withdrawing the offer, Defendant has posted the position of Proposal Coordinator.

52. As such, Defendant failed to reasonably accommodate Plaintiff's disabilities and failed to engage in the interactive process to determine such reasonable accommodations.

53. It is believed and therefore averred Defendant terminated Plaintiff's employment because of her actual and/or perceived disabilities, because Defendant regarded her as being

disabled, for her past record of impairment, and in retaliation for her request(s) for an accommodation in connection thereto, in violation of the ADA and PHRA.

54.    As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101,** *et seq.*
**DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION**

55.    Paragraphs 1 through 54 are hereby incorporated by reference as though the same were fully set forth at length herein.

56.    At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

57.    Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

58.    Plaintiff's ADHD and EDS substantially limit her ability to engage in one or more major life activities for an extended period of time.

59.    Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

60.    Despite her disabilities, Plaintiff would have been able to perform the essential functions of her job, with or without a reasonable accommodation.

61.    By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process to

determine and consider reasonable accommodations for Plaintiff, by failing to provide reasonable accommodations to Plaintiff, and by terminating Plaintiff's employment because of her actual and/or perceived disabilities, because Defendant regarding her as being disabled, for her past record of impairment, and/or for her request(s) for reasonable accommodations in connection thereto.

62. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, and other significant economic benefits as well as emotional pain and suffering, emotional distress, damage to reputation, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial;

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D. Pre-judgment interest in an appropriate amount;

E. Such other and further relief as is just and equitable under the circumstances; and

F.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

**COUNT II**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951, *et seq.***
**DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION**

63.  Paragraphs 1 through 62 are hereby incorporated by reference, as though the same were fully set forth at length herein.

64.  Plaintiff is a qualified individual with a disability within the meaning of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA") and as such is a member of a class protected under the PHRA from unlawful discrimination and/or retaliation.

65.  Plaintiff's ADHD and EDS substantially limit her ability to engage in one or more major life activities for an extended period of time.

66.  Despite her disabilities, Plaintiff would have been able to perform the essential function of her job with or without a reasonable accommodation.

67.  Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

68.  Defendant, through its agents, officers, servants, and/or employees, violated the PHRA by terminating Plaintiff's employment because of her actual and/or perceived disabilities, because Defendant regarding her as being disabled, for her past record of impairment, and/or for her request(s) for reasonable accommodations in connection to thereto.

69.  Additionally, Defendant, through its agents, officers, servants, and/or employees, violated the PHRA by failing to engage in the interactive process to determine and consider

reasonable accommodations for Plaintiff, and by failing to provide reasonable accommodations to Plaintiff.

70.    As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, and other significant economic benefits as well as emotional pain and suffering, emotional distress, and humiliation.

71.    The conduct described above constitutes a violation of the PHRA and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.  Back wages, front pay, bonuses, and compensatory damages in an amount to be determined at trial;

B.  Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

C.  Pre-judgment interest in an appropriate amount; and

D.  Such other and further relief as is just and equitable under the circumstances; and,

E.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:      */s/ Mary Kramer*
Mary Kramer, Esq.
PA Attorney I.D. No. 324078
1628 John F. Kennedy Blvd., Suite 2000
Philadelphia, PA 19103
Phone: (267) 273-1054
Fax: (215) 525-0210
mkramer@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

Dated: December 22, 2025

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.